Timothy R. Sullivan  #128467
McLAUGHLIN SULLIVAN LLP
1396 W. Herndon Ave., Suite 106
Fresno, CA 93711
(559) 439-8200
Fax: (559) 439-8230

Attorney for Plaintiff LG.Philips LCD Co., Ltd.

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LG. PHILIPS LCD CO. LTD., | Civil Action No. 1: 07- mc-9 (SMS) |
| Plaintiff, | Related Case C.A. No. 03-343-JJF (U.S. District Court of the District of Delaware) |
| v. | |
| TATUNG COMPANY, ET AL., | **PLAINTIFF'S COMBINED MOTION TO COMPEL AND BRIEF IN OPPOSITION TO PELCO'S APPLICATION TO SHORTEN TIME FOR NOTICE AND HEARING OF ITS MOTION TO QUASH, OR ALTERNATIVELY, MODIFY SUBPOENA DUCES TECUM** |
| Defendants. | |
| | DISCOVERY MATTER |
| | Judge: Hon. Sandra M. Snyder |

LA:17252428.1

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION.......................................................................................... 1

II.  ARGUMENT .............................................................................................. 4

    A.   Response To Pelco's Application To Shorten Time ........................... 4

    B.   Opposition To Motion To Quash....................................................... 5

        1.   The Subpoena is Not Vague or Overbroad ................................ 5

        2.   The Limitations are Reasonable in Scope ................................. 6

        3.   Pelco's Trade Secret Argument Is Speculative, At Best........... 7

        4.   Even if Pelco's Information is Confidential, The
            Protective Order Protects Such Information ............................. 7

III. CONCLUSION ............................................................................................ 8

LA:17252428.1

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Am. Eagle Wheel Corp. v. Tire & Wheel Outlet*
2007 WL 568246, at *1 (E.D.Cal. Feb. 21, 2007) .................................................. 8

*Beckman Indus., Inc. v. International Ins. Co.*
966 F.2d 470 (9th Cir. 1992) .................................................. 5, 7

*C. R. Bard, Inc. v. Advanced Cardiovascular Sys., Inc.*
911 F.2d 670 (Fed. Cir. 1990) .................................................. 1

*Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*
246 F.3d 1336 (Fed. Cir. 2001) .................................................. 1

*E.I. DuPont De Nemours and Co. v. Monsanto Co.*
903 F. Supp. 680 (D. Del. 1995) .................................................. 5

*MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*
420 F.3d 1369 (Fed. Cir. 2005) .................................................. 1

*Minnesota Mining & Mfg. Co. v. Chemque, Inc.*
303 F.3d 1294 (Fed. Cir. 2002) .................................................. 1

*Phillips ex rel. Estates of Byrd v. General Motors Corp.*
307 F.3d 1206 (9th Cir. 2002) .................................................. 5, 7

## Statutes

35 United States Code
§ 271 .................................................. 5

## Rules

Federal Rules of Civil Procedure
Rule 26(b) .................................................. 5
Rule 45(c)(2)(b) .................................................. 1
Rule 45(c)(3) .................................................. 1

LA:17252428.1

1    Pursuant to Rule 45(c)(3) of the Federal Rules of Civil Procedure, Plaintiff

2  LG.Philips LCD Co., Ltd. ("LPL") hereby opposes the Motion to Quash, or

3  Alternatively, Modify Subpoena Duces Tecum And Notice of Deposition

4  ("Subpoena") filed by Third Party Pelco and moves this Court for an order pursuant

5  to Rule 45(c)(2)(B) compelling Pelco to produce the requested documents and

6  appear for the deposition.

7  I.    **INTRODUCTION**

8    This discovery dispute arises out of a patent infringement action pending in

9  the United States District Court in Delaware ("Main Case").  LPL is the owner of

10  U.S. Patent No. 6,498,718 ("the '718 Patent") and U.S. Patent No. 6,501,641 ("the

11  '641 Patent") (collectively, the "Patents-in-Suit"), which relate to mounting

12  techniques used in visual display products such as liquid crystal display ("LCD")

13  computer monitors, laptop computers, and televisions.  LPL has asserted patent

14  infringement claims against Defendants Tatung Company, Tatung Company of

15  America, Inc. (collectively "Tatung") and ViewSonic Corporation ("ViewSonic")

16  (collectively, the "Defendants").  The Defendants manufacture visual display

17  products which LPL alleges utilize LPL's patented techniques.  Among its claims,

18  LPL alleges that Defendants have induced other parties, including Pelco, to infringe

19  CEA's patents.[1]

20    LPL served the Subpoena on Pelco on or about February 14, 2007.  The

21  Subpoena sought documents to be produced on March 5, 2007, and commanded

---

22  [1] "A person induces infringement under § 271(b) by actively and knowingly aiding and abetting another's direct
23  infringement." *C. R. Bard, Inc. v. Advanced Cardiovascular Sys., Inc.*, 911 F.2d 670, 675 (Fed. Cir. 1990). If the
defendant has knowledge of the patent, then upon a showing that defendant "had intent to induce the specific acts
constituting infringement, intent additionally to cause an infringement can be presumed." *MEMC Elec. Materials,*
24  *Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1379 (Fed. Cir. 2005). A jury could conclude that e-mails
between a foreign defendant and a U.S. company "represent product support" showing that the defendant was aware
25  of potentially infringing activities in the U.S. by the U.S. company and that the defendant "intended to encourage
those activities." *Id.* at 1379-80. *See also Minnesota Mining & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1305
26  (Fed. Cir. 2002) (evidence did not support finding of no inducement where defendant was aware of patents and
supplied infringing products to customers "with instructions on how they were to be used, which, when followed,
27  would lead to infringement."); *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336,
1351 (Fed. Cir. 2001) (defendant's acts in connection with selling infringing audio chips, manufactured in Singapore
28  and sold to customers that resold to the U.S. PC market, constituted active inducement).

LA:17252428.1

Pelco to appear for a deposition on March 28, 2007.  The Subpoena was issued based on LPL's understanding that Pelco, who has a business relationship with at least Tatung and possibly also ViewSonic, has documents that are relevant to the instant action.  On February 26, 2007, Pelco's counsel contacted LPL's counsel regarding the Subpoena and expressed concern that the Subpoena sought information that Pelco believed to be trade secrets.  In response, on that same day, LPL's counsel forwarded Pelco by electronic mail a copy of the Protective Order entered in this case, which governs the use and disclosure of confidential information.  Exhibit 1.

On February 27, 2007, Pelco's counsel again contacted LPL's counsel, this time to reschedule the deposition set in the Subpoena, as Pelco asserted that the deposition date conflicted with a trade show that Pelco's likely witness would attend.  LPL's counsel agreed to reschedule the deposition to accommodate the schedule of Pelco's witness.  Moreover, LPL's counsel stated that "we are willing to speak with you about narrowing the scope of the document requests in the subpoena to enable Pelco to produce the documents in advance of the deposition."  Exhibit 1.  During that conversation, Pelco's counsel indicated that Pelco was "willing to work with [LPL] to produce the requested documents."  *Id.*

During the call on February 27, 2007, Pelco also expressed concern about the scope of the Subpoena.  While LPL did not agree that the Subpoena was overbroad or unduly burdensome, LPL nonetheless agreed that it would limit the scope of the Subpoena, in the interest of cooperation and to mitigate the burdens on Pelco, if Pelco was willing to fully comply with the Subpoena as limited.  As such, LPL sent Pelco's counsel an e-mail containing limitations to the scope of the Subpoena (the "Limitations").  Exhibit 2.

Those limitations, which are more than reasonable, are:

1.    A sales summary consisting of a printout from Pelco's sales

- 2 -

LA:17252428.1

database.  The summary should reflect the purchase price, brand name, model number, quantity, and sales price of the products sold by Pelco and a sales summary showing all of this information for the products purchased by Pelco from each defendant.  These documents should also show the correlation between the Tatung (defined herein as Tatung Co. and Tatung Co. of America, Inc.) or ViewSonic model number and Pelco's model numbers.

2.  All contracts, supply agreements, licenses, or distribution agreements between Pelco and Tatung or ViewSonic.

3.  Documents related to the technical specifications, manufacturing, or assembly of Tatung and ViewSonic products, including any drawings and/or narrative descriptions of same.

4.  Documents relating to marketing of Tatung or ViewSonic products to Pelco, including but not limited to brochures, power point presentations, documents identifying target customers, market forecasts, emails, and meeting notes.

5.  Documents sufficient to identify OEMs or ODMs that manufacture Pelco's products incorporating visual display products manufactured by Tatung or ViewSonic, agreements or other documents that mention Tatung or ViewSonic between Pelco and any OEMs, and documents sufficient to show that Tatung or ViewSonic had knowledge of such agreements (such as correspondence with Tatung or ViewSonic).

6.  Documents relating to product support or service on Pelco's visual display products provided by Tatung or ViewSonic through a warranty or otherwise, including documents reflecting warranties provided by Tatung or ViewSonic, and documents reflecting any type of repair assistance or help desk assistance, including setting up repair centers in the US.

On March 1, 2007, Pelco's counsel contacted LPL's counsel to reiterate its concern about producing "trade secret" information.  LPL's counsel reiterated that the Protective Order in the case protects any confidential information from being disclosed even to the parties to the litigation, so long as it is marked with the appropriate legend.  Indeed, Pelco acknowledged that "[w]e realize that the protective order arguably protects that information from being provided even to some of the parties in your case, but I think you can understand Pelco's reluctance

- 3 -

LA:17252428.1

1    to make public in any fashion any of that information." Exhibit 3.

2          In response, LPL's counsel again clarified that the Protective Order only

3    allows documents marked as "Highly Sensitive Confidential" to be disclosed to the

4    attorneys working on the case and not even to the actual parties. Exhibit 4. As a

5    result, LPL stated its position that Pelco has no justification for withholding the

6    sales and other information that LPL seeks.

7          Since that time, LPL and Pelco have not been able to reach an agreement.

8    Thus, LPL requests that this Court grant LPL's motion to compel and deny Pelco's

9    motion to quash. In addition, LPL respectfully requests that the Court grant LPL

10   permission to argue at the hearing via teleconference.[2]

11         Due to a mandatory discovery deadline for third party discovery in the Main

12   Case, LPL respectfully requests that Pelco be ordered to appear for a deposition on

13   March 22, 2007, which is the rescheduled date as agreed upon by the parties, and

14   produce documents at least two business days in advance of the deposition.

15   II.    **ARGUMENT**

16       A.    **Response To Pelco's Application To Shorten Time**

17         In its application, Pelco requested a shortened time to respond for notice and

18   hearing on its motion. While it is correct that LPL's counsel agreed to an expedited

19   hearing on this matter, LPL does not agree that "Pelco . . . was provided a very

20   limited time by the plaintiff in which to adequately respond to both the request for

21   documents and testimonial components of the Subpoena." Appl. at 2. Indeed, as

22   stated above, LPL served the Subpoena on or about February 14, 2007. While the

23   Subpoena noticed the document production for March 5, 2007, the deposition was

24   not scheduled until March 28, 2007. Thus, even after it was served, Pelco had

25   nearly six weeks to prepare for the deposition. In addition, even though LPL

26   believed that Pelco would have ample time to produce the documents before March

27   _____

28   [2] LPL's local counsel will be present at any hearing scheduled by this Court. However, because LPL's lead trial counsel is involved in the principal matter pending in the District of Delaware, LPL requests permission to participate via teleconference.

LA:17252428.1

1    5, LPL nonetheless extended Pelco's time for producing documents until one week

2    before the deposition, so long as the documents are received in our Washington,

3    D.C. office on that date. As such, Pelco had more than enough time to produce the

4    requested documents, particularly in light of the narrow scope of the Limitations.

5    Nonetheless, so that this matter may be resolved in time for Pelco to appear as

6    agreed at the deposition on March 22, 2007, LPL agreed to an expedited hearing.

7         **B.**    **Opposition To Motion To Quash**

8            1.    The Subpoena is Not Vague or Overbroad

9       LPL's Subpoena is reasonably calculated to lead to the discovery of

10   admissible evidence. *See* Fed R. Civ. P. 26(b). Indeed, as stated above, the

11   Subpoena was issued based on LPL's understanding that Pelco, who has a business

12   relationship with Tatung, has documents that are relevant to the instant action.

13   Indeed, LPL has information to believe that Pelco purchases products directly from

14   Tatung in the United States. Under 35 U.S.C. § 271, Tatung is liable as an infringer

15   if it induces, in other words aids, abets or encourages, direct infringement by a third

16   party. *See E.I. DuPont De Nemours and Co. v. Monsanto Co.*, 903 F. Supp. 680,

17   736 (D. Del. 1995). Moreover, the Subpoena seeks documents and information

18   related solely to the products at issue in this action.

19       Even if the Subpoena as originally drafted was vague and/or unduly broad,

20   (which LPL does not concede), however, the Limitations clearly set forth the

21   categories of documents sought by LPL and narrows the scope of the original

22   Subpoena. Pelco not only fails to even inform the Court of those Limitations, but it

23   also fails to address why those Limitations are not reasonably clear and narrow in

24   scope. *Phillips ex rel. Estates of Byrd v. General Motors Corp.,* 307 F.3d 1206,

25   1210-11 (9th Cir. 2002) ("For good cause to exist, the party seeking protection

26   bears the burden of showing specific prejudice or harm will result if no protective

27   order is granted.); *see Beckman Indus., Inc. v. International Ins. Co.,* 966 F.2d 470,

28   476 (9th Cir. 1992) (holding that "broad allegations of harm, unsubstantiated by

LA:17252428.1

1  specific examples or articulated reasoning, do not satisfy the Rule 26(c) test")."

2  Thus, Pelco has failed to make the requisite showing of harm it will suffer if no

3  protective order is granted.  LPL asserts that the Limitations to the Subpoena render

4  Pelco's arguments regarding the scope of the Subpoena moot.

2.    The Limitations are Reasonable in Scope

6  As stated above, LPL's Limitations seek only information from January 2002

7  to the present regarding the products at issue in the Main Case.  Specifically, LPL

8  has requested documents related to purchase and sale of the infringing products in

9  the United States, documents relating to Defendants' efforts to market the

10  infringing products in the United States, and other important discovery concerning

11  infringement, inducement, damages, and other issues.[3]

12  LPL needs the discovery that it seeks from Pelco because the fact discovery

13  in the Main Case will close on March 30, 2007 and because Defendant Tatung has

14  not cooperated with LPL's discovery efforts.  Although LPL served its discovery

15  requests in November 2005, Tatung has refused to fully comply with those requests

16  by, among other things, imposing unreasonable limitations and conditions on their

17  production.  Since then, LPL negotiated with Tatung but Tatung refused to produce

18  the requested documents.  LPL filed multiple motions to compel in the Main Case

19  that addressed issues common to all Defendants in the Main Case in September,

20  October, November and December 2006 and in January, February and March 2007.

21  However, the Special Master has not ruled on many issues raised in LPL's motions

22  and Tatung continues to withhold documents per its objections and limitations.  As

23  such, it is crucial that LPL obtain these documents from Pelco because Tatung is

24  refusing to produce and LPL's subpoena to Pelco is LPL's only avenue to get the

25  complete information regarding Tatung's inducement activities.  In order to

26

27  [3] LPL has also sought the same information and documents, unsuccessfully, from the Defendants.  Defendants have produced some - but certainly not all – discovery that LPL seeks.  Notably, much of Defendants' production is

28  subject to objections and limitations that LPL disputes and which are the subject of related discovery motions already pending before the Special Master in the Main Case.

- 6 -

compile all relevant evidence and properly prepare its case for trial, LPL seeks
discovery from Pelco so that it can test the sufficiency and completeness of
Tatung's own production.

>    3.    Pelco's Trade Secret Argument Is Speculative, At Best

Pelco further argues that the Subpoena should be quashed merely because it
seeks disclosure of confidential information.  Indeed, in the declarations in support
of its motion, Pelco states that the Subpoena "require[s] disclosure of information
which <u>may</u> include trade secrets or other confidential research, development, or
commercial information."  Decl. of Leo Labbe at ¶ 4.  Pelco has not confirmed that
trade secret information will actually be implicated, nor the number of documents
potentially affected.  It is also not clear why Pelco has so far failed to produce any
documents that are not confidential.  Again, Pelco has failed to cite any specific
allegations of harm it will suffer if its motion for a protective order is denied.  *See*
*Phillips,* 307 F.3d at 1210-11; *Beckman Indus.,* 966 F.2d at 476.  Also, Pelco has
not presented any evidence that the information it received from Tatung is
confidential.  LPL has no information indicating that Pelco had entered into any
agreement with Tatung regarding confidentiality.  As such, there is no reason why
the existing protective order in this case is insufficient to protect Pelco's
information.

>    4.    Even if Pelco's Information is Confidential, The Protective
>          Order Protects Such Information

Pelco's argument that it does not wish to produce confidential information is
irrelevant in light of the comprehensive Protective Order that has been entered in
the case pending in the District of Delaware.  *See* Exhibit 5.  As soon as Pelco
raised confidentiality concerns about disclosure of its documents and sensitive
information, on the same day, LPL's counsel delivered a copy of the Protective
Order to Pelco.  *See* Ex. 1.  "Protective orders safeguard the parties and other
persons in light of the otherwise broad reach of discovery."  *Am. Eagle Wheel Corp.*

- 7 -

1   *v. Tire & Wheel Outlet*, 2007 WL 568246, at *1 (E.D.Cal. Feb. 21, 2007).  Because

2   such a "safeguard" is already in place to protect Pelco's production of information,

3   the Court should deny Pelco's motion to quash.  Further, Pelco's attempt to

4   distinguish itself as a partnership and not a corporation is a similarly unpersuasive

5   argument to grant the motion to quash because the protective order entered in this

6   case does <u>not</u> distinguish between entities--the protective order protects all "non-

7   parties."

8   **III.   CONCLUSION**

9          For the foregoing reasons, LPL requests that Pelco's motion be denied and,

10   and that the Court compel Pelco to produce the requested documents and appear for

11   the deposition.

12

13   Dated:    March 14, 2007

14

15

16

17                                              By: __/S/_____
                                                    Attorney for Plaintiff
18                                                  LPL

19

20

21

22

23

24

25

26

27

28

- 8 -

LA:17252428.1

CERTIFICATE OF SERVICE

The undersigned counsel certifies that, on March 15, 2007, he electronically filed the

foregoing document with the Clerk of the Court using CM/ECF, which will send

automatic notification of the filing to the following:

Donald R. Fischbach
Christopher D. Bell
**BAKER, MANOCK, & JENSEN**
Fig Garden Financial Center
5260 N. Palm Ave, 4th Floor
Fresno, CA 93704-2209

The undersigned counsel further certifies that copies of the foregoing documents were

sent by email to the following counsel on March 15, 2007, and will be sent by first class

mail on March 15, 2007, to the following non-registered participants.

Jeffrey B. Bove, Esq.
jbove@cblh.com
Jaclyn M. Mason, Esq.
jmason@cblh.com
**CONNOLY BOVE LODGE & HUTZ LLP**
1007 North Orange Street
P.O. Box 2207
Wilmington, Delaware 19899-2207

Scott R. Miller, Esq.
smiller@cblh.com
355 South Grand Avenue
Suite 3150
Los Angeles, CA 90071

Tracy Roman, Esq.
troman@raskinpeter.com
**RASKIN PETER RUBIN & SIMON LLP**
1801 Century Park East, Suite 2300
Los Angeles, CA 90067

Frederick L. Cottrell, Esq.
Cottrell@rlf.com
Anne Shea Gaza, Esq.
garza@rlf.com
**RICHARDS, LAYTON & FINGER**
One Rodney Square
P.O. Box 551
Wilmington, DE 19899

Valerie Ho, Esq.
hov@tglaw.com
Mark H. Krietzman, Esq.
krietzman@gtlaw.com
**GREENBERG TRAURIG LLP**
2450 Colorado Avenue, Suite 400E
Santa Monica, CA 90404

March 15, 2007

Janella Ohanesian

# EXHIBIT 1

**Klevens, Shari**

| | |
|---|---|
| From: | Klevens, Shari |
| Sent: | Monday, February 26, 2007 2:29 PM |
| To: | drf@bmj-law.com |
| Subject: | LG.Philips LCD Co., Ltd. v. Tatung, et al., C.A. No. 04-343-JJF |

| | |
|---|---|
| Attachments: | DC-#50462607-v1-Stipulation_and_Order.PDF |

Dear Don:

This email is a follow up to our discussion regarding Plaintiff LG.Philips LCD Co., Ltd.'s ("LG") third party subpoena ("Subpoena") to Pelco.

As you requested, I have attached below a copy of the Protective Order signed in this case. In addition, I understand that the individual who is most likely to be deposed on behalf of Pelco may not be available on the date noticed and that you will get back to me regarding his or her availability. As I indicated during the call, we are willing to work with Pelco to schedule the deposition at a mutually convenient time, so long as the deposition can be scheduled consistent with the other depositions scheduled in the case and can be taken prior to March 30, 2007.

Moreover, while we believe that the Subpoena is reasonable in scope, we are willing to speak with you about narrowing the scope of the document requests in the subpoena to enable Pelco to produce the documents in advance of the deposition. Please contact me once you have reviewed the protective order if you would like to discuss this issue further. I look forward to speaking with you again regarding these issues.

Regards,

Shari



DC-#5046260
1-Stipulation_a

Shari L. Klevens
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, DC 20006
tel 202.496.7612
fax 202.496.7756

1

# EXHIBIT 2

**Klevens, Shari**

| | |
|---|---|
| From: | Klevens, Shari |
| Sent: | Tuesday, February 27, 2007 2:28 PM |
| To: | drf@bmj-law.com |
| Subject: | RE: LG.Philips LCD Co., Ltd. v. Tatung, et al., C.A. No. 04-343-JJF |

Dear Don:

This email is a follow up to our telephone conversation this afternoon and our earlier correspondence regarding the Subpoena to Pelco in the referenced matter. During our call, you indicated that there is a trade show beginning on March 28, 2007 that will be attended by Pelco's potential witness. As a result, you asked that we reschedule the deposition. As we discussed, please provide me with potential dates for the deposition between March 12 and March 28. Please note, however, that we prefer to reschedule the deposition on March 22, as we have another deposition scheduled to take place on March 23 not far from Pelco's location.

In addition, I understand that you are preparing to serve objections to the Subpoena, but that you are willing to work with LG to produce the requested documents. While we do not believe that the Subpoena is overbroad or unduly burdensome, we will agree to substantially limit the scope of the document requests in the Subpoena as outlined below in the interest of compromise, if Pelco is willing to fully comply with the Subpoena as limited. Further, after a review of the documents produced by Pelco in response to the Subpoena, we will determine whether a deposition will be necessary. We are hopeful that a deposition will not be required, especially if we can obtain an affidavit from Pelco in lieu of deposition testimony. As such, LG is willing to limit its document requests to the following:

1. A sales summary consisting of a printout from Pelco's sales database. The summary should reflect the purchase price, brand name, model number, quantity, and sales price of the products sold by Pelco and a sales summary showing all of this information for the products purchased by Pelco from each defendant. These documents should also show the correlation between the Tatung (defined herein as Tatung Co. and Tatung Co. of America, Inc.) or ViewSonic model number and Pelco's model numbers.

2. All contracts, supply agreements, licenses, or distribution agreements between Pelco and Tatung or ViewSonic.

3. Documents related to the technical specifications, manufacturing, or assembly of Tatung and ViewSonic products, including any drawings and/or narrative descriptions of same.

4. Documents relating to marketing of Tatung or ViewSonic products to Pelco, including but not limited to brochures, power point presentations, documents identifying target customers, market forecasts, emails, and meeting notes.

5. Documents sufficient to identify OEMs or ODMs that manufactured Pelco's products incorporating visual display products manufactured by Tatung or ViewSonic, agreements or other documents that mention Tatung or ViewSonic between Pelco and any OEMs, and documents sufficient to show that Tatung or ViewSonic had knowledge of such agreements (such as correspondence with Tatung or ViewSonic).

6. Documents relating to product support or service on Pelco's visual display products provided by Tatung or ViewSonic through a warranty or otherwise, including documents reflecting warranties

1

provided by Tatung or ViewSonic, and documents reflecting any type of repair assistance or help desk assistance, including setting up repair centers in the US.

We believe that the above limitations are more than reasonable. In addition, in light of the substantial narrowing of the categories of documents requested by the Subpoena, we believe that there is no reason why the documents cannot be produced by March 5. In the further interest of compromise, however, we are willing to extend Pelco's time for producing documents until one week before the deposition, so long as the documents are received in our Washington, D.C. office on that date. In light of the above, please advise me on or before March 2, 2007 of proposed dates for Pelco's deposition and whether Pelco will comply with the Subpoena as described herein.

Regards,

Shari

| From: | Klevens, Shari |
|---|---|
| Sent: | Monday, February 26, 2007 2:29 PM |
| To: | drf@bmj-law.com |
| Subject: | LG.Philips LCD Co., Ltd. v. Tatung, et al., C.A. No. 04-343-JJF |

Dear Don:

This email is a follow up to our discussion regarding Plaintiff LG.Philips LCD Co., Ltd.'s ("LG") third party subpoena ("Subpoena") to Pelco.

As you requested, I have attached below a copy of the Protective Order signed in this case. In addition, I understand that the individual who is most likely to be deposed on behalf of Pelco may not be available on the date noticed and that you will get back to me regarding his or her availability. As I indicated during the call, we are willing to work with Pelco to schedule the deposition at a mutually convenient time, so long as the deposition can be scheduled consistent with the other depositions scheduled in the case and can be taken prior to March 30, 2007.

Moreover, while we believe that the Subpoena is reasonable in scope, we are willing to speak with you about narrowing the scope of the document requests in the subpoena to enable Pelco to produce the documents in advance of the deposition. Please contact me once you have reviewed the protective order if you would like to discuss this issue further. I look forward to speaking with you again regarding these issues.

Regards,

Shari

<< File: DC-#50462607-v1-Stipulation_and_Order.PDF >>

Shari L. Klevens
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, DC 20006
tel 202.496.7612
fax 202.496.7756

# EXHIBIT 3

Klevens, Shari

From:      Donald Fischbach [DRF@bmj-law.com]
Sent:      Thursday, March 01, 2007 2:41 PM
To:        Klevens, Shari
Subject:   RE: LG.Philips LCD Co., Ltd. v. Tatung, et al., C.A. No. 04-343-JJF

This is to confirm our telephone conversation today that we have agreed to move the Pelco PMK depostion to
March 22, 2007, still at the court reporters' office designated in your prior notice.   We did not discuss a time for
the deposition but that can be worked out later.  We also agreed that the due date for the production of
documents is now March 15, 2007.  Thank you for your courtesies in that regard.  However, we still need to
discuss what will or will not be produced and objected to at the time of the deposition.  You mentioned that the
most important information being sought involves Pelco sales of products with Tatung, etc. "components" but
that is precisely what Pelco must protect from disclosure.  We realize that the protective order arguably protects
that information from being provided even to some of the parties in your case, but I think you can understand
Pelco's reluctance to make public in any fashion any of that information.  As mentioned in my previous
correspondence, Pelco is not a publicly traded company where much of the information you seek is readily
available to the general public.  However, we will continue to try and work this out.

Donald Fischbach
BAKER, MANOCK & JENSEN
5260 North Palm, Suite 421
Fresno, CA  93704
Telephone (559) 432-5400
Facsimile (559) 432-5620
drf@bmj-law.com

This e-mail contains confidential, privileged information,
protected by the attorney-client privilege
and work product doctrine, intended only
for the use of the addressee.  Do not read, copy
or disseminate this e-mail unless you are the
addressee.  If you have received this e-mail
in error, please call us (collect) immediately
at (559) 432-5400 and ask to speak to the
message sender.

Please e-mail the message back to the sender
by using the reply feature of your e-mail system.
After replying to the sender, please immediately
delete this e-mail from your In Box and
empty your Trash folder.  Thank you.

>>> "Klevens, Shari" <sklevens@mckennalong.com> 02/27/07 11:28 AM >>>
Dear Don:

This email is a follow up to our telephone conversation this afternoon
and our earlier correspondence regarding the Subpoena to Pelco in the
referenced matter.  During our call, you indicated that there is a trade
show beginning on March 28, 2007 that will be attended by Pelco's
potential witness.  As a result, you asked that we reschedule the

deposition. As we discussed, please provide me with potential dates for the deposition between March 12 and March 28. Please note, however, that we prefer to reschedule the deposition on March 22, as we have another deposition scheduled to take place on March 23 not far from Pelco's location.

In addition, I understand that you are preparing to serve objections to the Subpoena, but that you are willing to work with LG to produce the requested documents. While we do not believe that the Subpoena is overbroad or unduly burdensome, we will agree to substantially limit the scope of the document requests in the Subpoena as outlined below in the interest of compromise, if Pelco is willing to fully comply with the Subpoena as limited. Further, after a review of the documents produced by Pelco in response to the Subpoena, we will determine whether a deposition will be necessary. We are hopeful that a deposition will not be required, especially if we can obtain an affidavit from Pelco in lieu of deposition testimony. As such, LG is willing to limit its document requests to the following:

1.   A sales summary consisting of a printout from Pelco's sales database. The summary should reflect the purchase price, brand name, model number, quantity, and sales price of the products sold by Pelco and a sales summary showing all of this information for the products purchased by Pelco from each defendant. These documents should also show the correlation between the Tatung (defined herein as Tatung Co. and Tatung Co. of America, Inc.) or ViewSonic model number and Pelco's model numbers.

2.   All contracts, supply agreements, licenses, or distribution agreements between Pelco and Tatung or ViewSonic.

3.   Documents related to the technical specifications, manufacturing, or assembly of Tatung and ViewSonic products, including any drawings and/or narrative descriptions of same.

4.   Documents relating to marketing of Tatung or ViewSonic products to Pelco, including but not limited to brochures, power point presentations, documents identifying target customers, market forecasts, emails, and meeting notes.

5.   Documents sufficient to identify OEMs or ODMs that manufactured Pelco's products incorporating visual display products manufactured by Tatung or ViewSonic, agreements or other documents that mention Tatung or ViewSonic between Pelco and any OEMs, and documents sufficient to show that Tatung or ViewSonic had knowledge of such agreements (such as correspondence with Tatung or ViewSonic).

6.   Documents relating to product support or service on Pelco's visual display products provided by Tatung or ViewSonic through a warranty or otherwise, including documents reflecting warranties provided by Tatung or ViewSonic, and documents reflecting any type of repair assistance or help desk assistance, including setting up repair centers in the US.

We believe that the above limitations are more than reasonable. In addition, in light of the substantial narrowing of the categories of documents requested by the Subpoena, we believe that there is no reason

3/14/2007

why the documents cannot be produced by March 5. In the further
interest of compromise, however, we are willing to extend Pelco's time
for producing documents until one week before the deposition, so long as
the documents are received in our Washington, D.C. office on that date.
In light of the above, please advise me on or before March 2, 2007 of
proposed dates for Pelco's deposition and whether Pelco will comply with
the Subpoena as described herein.

Regards,

Shari


> _____
> From:    Klevens, Shari
> Sent:    Monday, February 26, 2007 2:29 PM
> To:   drf@bmj-law.com
> Subject:   LG.Philips LCD Co., Ltd. v. Tatung, et al., C.A. No.
> 04-343-JJF
>
> Dear Don:
>
> This email is a follow up to our discussion regarding Plaintiff
> LG.Philips LCD Co., Ltd.'s ("LG") third party subpoena ("Subpoena") to
> Pelco.
>
> As you requested, I have attached below a copy of the Protective Order
> signed in this case. In addition, I understand that the individual
> who is most likely to be deposed on behalf of Pelco may not be
> available on the date noticed and that you will get back to me
> regarding his or her availability. As I indicated during the call, we
> are willing to work with Pelco to schedule the deposition at a
> mutually convenient time, so long as the deposition can be scheduled
> consistent with the other depositions scheduled in the case and can be
> taken prior to March 30, 2007.
> Moreover, while we believe that the Subpoena is reasonable in scope,
> we are willing to speak with you about narrowing the scope of the
> document requests in the subpoena to enable Pelco to produce the
> documents in advance of the deposition. Please contact me once you
> have reviewed the protective order if you would like to discuss this
> issue further. I look forward to speaking with you again regarding
> these issues.
> Regards,
> Shari
>   << File: DC-#50462607-v1-Stipulation_and_Order.PDF >>
>
> Shari L. Klevens
> McKenna Long & Aldridge LLP
> 1900 K Street, NW
> Washington, DC 20006
> tel 202.496.7612
> fax 202.496.7756
>

CONFIDENTIALITY NOTICE:
This e-mail and any attachments contain information from
the law firm of McKenna Long & Aldridge LLP, and are

3/14/2007

intended solely for the use of the named recipient or recipients. This e-mail may contain privileged attorney/client communications or work product. Any dissemination of this e-mail by anyone other than an intended recipient is strictly prohibited. If you are not a named recipient, you are prohibited from any further viewing of the e-mail or any attachments or from making any use of the e-mail or attachments. If you believe you have received this e-mail in error, notify the sender immediately and permanently delete the e-mail, any attachments, and all copies thereof from any drives or storage media and destroy any printouts of the e-mail or attachments.

3/14/2007

# EXHIBIT 4

Klevens, Shari

| | |
|---|---|
| **From:** | Klevens, Shari |
| **Sent:** | Thursday, March 01, 2007 3:19 PM |
| **To:** | Donald Fischbach |
| **Subject:** | RE: LG.Philips LCD Co., Ltd. v. Tatung, et al., C.A. No. 04-343-JJF |

Dear Don:

This email confirms that we agreed to reschedule Pelco's deposition to March 22, 2007 and also extended the date for Pelco to produce documents until March 15, 2007.

As I mentioned on the phone, however, we do not agree with Pelco's interpretation of the Protective Order in this case (as described in your February 27, 2007 letter). Indeed, to be clear, the Protective Order does protect information from being disclosed to the parties in the case if it is marked as "Highly Sensitive Confidential," and such documents may only be disclosed to the attorneys working on the case. Thus, Pelco has no justification for withholding the sales information that LG seeks. I understand that you will continue to work with Pelco to determine whether they will agree to produce those sales documents. However, as I mentioned during the call, if Pelco continues to withhold sales documents pursuant to its objections, LG will have no choice but to seek court intervention to enforce the Subpoena. We are hopeful, however, that motions practice will not be necessary and that Pelco will produce the requested documents, which would be protected from disclosure by the Protective Order entered in this action. Please notify me of Pelco's position on this matter no later than March 5, 2007 so that we can determine how to proceed. Thank you.

Please contact me if you have any further questions.

Shari

---

**From:** Donald Fischbach [mailto:DRF@bmj-law.com]
**Sent:** Thursday, March 01, 2007 2:41 PM
**To:** Klevens, Shari
**Subject:** RE: LG.Philips LCD Co., Ltd. v. Tatung, et al., C.A. No. 04-343-JJF

This is to confirm our telephone conversation today that we have agreed to move the Pelco PMK depostion to March 22, 2007, still at the court reporters' office designated in your prior notice. We did not discuss a time for the depostion but that can be worked out later. We also agreed that the due date for the production of documents is now March 15, 2007. Thank you for your courtesies in that regard. However, we still need to discuss what will or will not be produced and objected to at the time of the deposition. You mentioned that the most important information being sought involves Pelco sales of products with Tatung, etc. "components" but that is precisely what Pelco must protect from disclosure. We realize that the protective order arguably protects that information from being provided even to some of the parties in your case, but I think you can understand Pelco's reluctance to make public in any fashion any of that information. As mentioned in my previous correspondence, Pelco is not a publicly traded company where much of the information you seek is readily available to the general public. However, we will continue to try and work this out.

Donald Fischbach

BAKER, MANOCK & JENSEN
5260 North Palm, Suite 421
Fresno, CA  93704
Telephone (559) 432-5400
Facsimile (559) 432-5620
drf@bmj-law.com

---

This e-mail contains confidential, privileged information,
protected by the attorney-client privilege
and work product doctrine, intended only
for the use of the addressee.  Do not read, copy
or disseminate this e-mail unless you are the
addressee.  If you have received this e-mail
in error, please call us (collect) immediately
at (559) 432-5400 and ask to speak to the
message sender.

Please e-mail the message back to the sender
by using the reply feature of your e-mail system.
After replying to the sender, please immediately
delete this e-mail from your In Box and
empty your Trash folder.  Thank you.

>>> "Klevens, Shari" <sklevens@mckennalong.com> 02/27/07 11:28 AM >>>
Dear Don:

This email is a follow up to our telephone conversation this afternoon
and our earlier correspondence regarding the Subpoena to Pelco in the
referenced matter.  During our call, you indicated that there is a trade
show beginning on March 28, 2007 that will be attended by Pelco's
potential witness.  As a result, you asked that we reschedule the
deposition.  As we discussed, please provide me with potential dates for
the deposition between March 12 and March 28.  Please note, however,
that we prefer to reschedule the deposition on March 22, as we have
another deposition scheduled to take place on March 23 not far from
Pelco's location.

In addition, I understand that you are preparing to serve objections to
the Subpoena, but that you are willing to work with LG to produce the
requested documents.  While we do not believe that the Subpoena is
overbroad or unduly burdensome, we will agree to substantially limit the
scope of the document requests in the Subpoena as outlined below in the
interest of compromise, if Pelco is willing to fully comply with the
Subpoena as limited.  Further, after a review of the documents produced
by Pelco in response to the Subpoena, we will determine whether a
deposition will be necessary.  We are hopeful that a deposition will not
be required, especially if we can obtain an affidavit from Pelco in lieu
of deposition testimony.  As such, LG is willing to limit its document
requests to the following:
1.   A sales summary consisting of a printout from Pelco's sales
database.  The summary should reflect the purchase price, brand name,
model number, quantity, and sales price of the products sold by Pelco
and a sales summary showing all of this information for the products
purchased by Pelco from each defendant.  These documents should also

show the correlation between the Tatung (defined herein as Tatung Co. and Tatung Co. of America, Inc.) or ViewSonic model number and Pelco's model numbers.

2.   All contracts, supply agreements, licenses, or distribution agreements between Pelco and Tatung or ViewSonic.

3.   Documents related to the technical specifications, manufacturing, or assembly of Tatung and ViewSonic products, including any drawings and/or narrative descriptions of same.

4.   Documents relating to marketing of Tatung or ViewSonic products to Pelco, including but not limited to brochures, power point presentations, documents identifying target customers, market forecasts, emails, and meeting notes.

5.   Documents sufficient to identify OEMs or ODMs that manufactured Pelco's products incorporating visual display products manufactured by Tatung or ViewSonic, agreements or other documents that mention Tatung or ViewSonic between Pelco and any OEMs, and documents sufficient to show that Tatung or ViewSonic had knowledge of such agreements (such as correspondence with Tatung or ViewSonic).

6.   Documents relating to product support or service on Pelco's visual display products provided by Tatung or ViewSonic through a warranty or otherwise, including documents reflecting warranties provided by Tatung or ViewSonic, and documents reflecting any type of repair assistance or help desk assistance, including setting up repair centers in the US.

We believe that the above limitations are more than reasonable.  In addition, in light of the substantial narrowing of the categories of documents requested by the Subpoena, we believe that there is no reason why the documents cannot be produced by March 5.  In the further interest of compromise, however, we are willing to extend Pelco's time for producing documents until one week before the deposition, so long as the documents are received in our Washington, D.C. office on that date. In light of the above, please advise me on or before March 2, 2007 of proposed dates for Pelco's deposition and whether Pelco will comply with the Subpoena as described herein.

Regards,

Shari

> _____
> From:   Klevens, Shari
> Sent:   Monday, February 26, 2007 2:29 PM
> To:   drf@bmj-law.com
> Subject:   LG.Philips LCD Co., Ltd. v. Tatung, et al., C.A. No.
> 04-343-JJF
>
> Dear Don:
>
> This email is a follow up to our discussion regarding Plaintiff
> LG.Philips LCD Co., Ltd.'s ("LG") third party subpoena ("Subpoena") to

3/14/2007

> Pelco.
>
> As you requested, I have attached below a copy of the Protective Order
> signed in this case.  In addition, I understand that the individual
> who is most likely to be deposed on behalf of Pelco may not be
> available on the date noticed and that you will get back to me
> regarding his or her availability.  As I indicated during the call, we
> are willing to work with Pelco to schedule the deposition at a
> mutually convenient time, so long as the deposition can be scheduled
> consistent with the other depositions scheduled in the case and can be
> taken prior to March 30, 2007.
> Moreover, while we believe that the Subpoena is reasonable in scope,
> we are willing to speak with you about narrowing the scope of the
> document requests in the subpoena to enable Pelco to produce the
> documents in advance of the deposition.  Please contact me once you
> have reviewed the protective order if you would like to discuss this
> issue further.  I look forward to speaking with you again regarding
> these issues.
> Regards,
> Shari
>  << File: DC-#50462607-v1-Stipulation_and_Order.PDF >>
>
> Shari L. Klevens
> McKenna Long & Aldridge LLP
> 1900 K Street, NW
> Washington, DC 20006
> tel 202.496.7612
> fax 202.496.7756
>

CONFIDENTIALITY NOTICE:
This e-mail and any attachments contain information from
the law firm of McKenna Long & Aldridge LLP, and are
intended solely for the use of the named recipient or
recipients. This e-mail may contain privileged
attorney/client communications or work product. Any
dissemination of this e-mail by anyone other than an
intended recipient is strictly prohibited. If you are not a
named recipient, you are prohibited from any further
viewing of the e-mail or any attachments or from making any
use of the e-mail or attachments. If you believe you have
received this e-mail in error, notify the sender
immediately and permanently delete the e-mail, any
attachments, and all copies thereof from any drives or
storage media and destroy any printouts of the e-mail or
attachments.